**Affirmed and Memorandum Opinion filed October 11, 2018.**



**In the**

# Fourteenth Court of Appeals

### NO. 14-16-00126-CV

## CINDY MICHELLE JOHNSON, NICOLE MICHELLE LEE, AND VICKIE JOHNSON ROBINSON A/K/A VICKIE MARIE JOHNSON, Appellants

**v.**

## FALLON CARLIN, Appellee

**On Appeal from the 61st District Court
Harris County, Texas
Trial Court Cause No. 2015-00062**

## M E M O R A N D U M   O P I N I O N

Cindy Michelle Johnson, Nicole Michelle Lee, and Vickie Johnson Robinson a/k/a Vickie Marie Johnson (together, the appellants) appeal from the trial court's order granting final summary judgment against them and in favor of appellee Fallon Carlin on her fraud claims. The appellants argue that the trial court erred in granting Carlin's motion for summary judgment. We affirm.

## I.  BACKGROUND

In May 2014, the appellants posted an advertisement that they wished to sell their home health care business, Trendsetters Home Health Care LLC.  After learning of the advertisement, Carlin authorized Kendrick Smith to act as Carlin's agent in negotiations to purchase Trendsetters.  The appellants had many conversations with Smith and "positively asserted that they could legally sell Trendsetters and that Trendsetters would have no problem continuing to operate after the sale."  Smith recommended to Carlin that she purchase Trendsetters from the appellants.  Carlin relied on the appellants' representations and agreed to purchase the business for $150,000.  On June 18, 2014, Carlin entered into a share purchase agreement to purchase all the shares of Trendsetters from the appellants. Carlin paid them a total of $75,000 as a down payment: $33,750 to Vickie Robinson, $33,750 to Cindy Johnson, and $7,500 to Nicole Lee.

However, after Smith started the process to transfer Trendsetters to Carlin, the Texas Department of Aging and Disability Services sent Carlin a certified letter dated August 22, 2014.  The letter stated that Carlin was "in violation of Federal Survey and Certification (S&C) Letter No. 12-14-HHA."[1]  The letter stated that Trendsetters could not change ownership again because the current owners Cindy Johnson and Nicole Lee purchased Trendsetters on December 28, 2012, from Vickie Robinson and Cindy Johnson.  The letter stated that under "Chapter 97.23 and 97.25" of the Texas Administrative Code, a change of ownership occurs when "there is transfer of 50% or more stock."  The letter stated that the Centers for Medicare & Medicaid Services (CMS) would be notified.

The letter enclosed a Department of Health & Human Services CMS

---

[1] HHA is an acronym for "home health agency."

memorandum dated December 23, 2011. The subject of the memorandum was "Home Health Survey and Certification Activities Related to Program Safeguards: Change of Ownership," and the reference was "S&C: 12-14-HHA." The memorandum described a final rule applicable to HHAs "in accordance with [42 C.F.R.] § 424.550(b)(1)," effective January 1, 2011: "[I]f there is a change in majority ownership of an HHA by sale (including asset sales, stock transfers, mergers, and consolidations) within 36 months . . . after the HHA's most recent change in majority ownership, the provider agreement and Medicare billing privileges do **not** convey to the new owner." (Emphasis original.) If such a sale occurs, then CMS "will deactivate the HHA's Medicare billing number." Under the rule, Trendsetters would have to reenroll in the Medicare program as a new HHA, obtain a new survey or an accreditation from an approved organization with deeming authority, sign a new Medicare provider agreement, and receive a new CMS certification number.

Carlin asked the appellants to return the $75,000; they refused. Carlin stated in her affidavit that if she had known Trendsetters could not legally be sold to her, then she would not have entered into the share purchase agreement or paid the appellants any money.

In January 2015, Carlin filed suit against the appellants, alleging fraud and seeking actual and exemplary damages. The appellants answered Carlin's suit with a general denial. In October 2015, Carlin filed a traditional motion for summary judgment. To her summary-judgment motion, Carlin attached: (1) Carlin's affidavit, which appended the share purchase agreement, the August 2014 letter, and the December 2011 memorandum; (2) Smith's affidavit; (3) another copy of the share purchase agreement; and (4) another copy of the August 2014 letter and the December 2011 memorandum.

The appellants did not respond and did not appear at the hearing. The trial court signed an order granting final summary judgment against the appellants on November 20, 2015. Within this order, the trial court stated that it conducted a hearing on Carlin's unliquidated exemplary damages, heard testimony, and assessed damages. The trial court ordered that Carlin recover actual damages of $33,750 plus exemplary damages of $50,000 from Cindy Johnson; actual damages of $7,500 plus exemplary damages of $15,000 from Nicole Lee; and actual damages of $33,750 plus exemplary damages of $50,000 from Vicki Johnson Robinson a/k/a Vickie Marie Johnson.

The appellants timely filed a motion for reconsideration and/or motion for new trial on December 20, 2015. The appellants argued that they should receive a new trial because Carlin did not use "the most effective methods" of service and the appellants "did not receive and/or were not aware" of the summary-judgment motion and notice of hearing. They emphasized their prior lack of counsel in the case. They argued that they had a "meritorious defense" and attached affidavits by Cindy Johnson and Vickie Robinson. The appellants also filed an affidavit by Nicole Lee. Carlin filed a response.[2] The appellants' motion was overruled by operation of law, and they timely appealed.

## II.   ANALYSIS

We apply de novo review to the grant of a traditional motion for summary judgment. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005).

---

[2] To her response, Carlin attached: Cindy Johnson's answer filed March 9, 2015; the appellants' amended answer filed June 3, 2015; the appellants' motion for reconsideration and/or motion for new trial, with exhibits; a printout of the case's e-service filing details via Cindy Johnson's email and proof of delivery of Carlin's summary-judgment motion and notice of hearing on October 26, 2015; a printout of the U.S. first-class mail transaction details to Vickie Robinson and Nicole Lee on October 26, 2015; Lee's affidavit; and the affidavit of Joel Gordon, counsel for Carlin.

Courts properly render traditional summary judgment if the motion and evidence show there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. *See* Tex. R. Civ. P. 166a(c); *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548 (Tex. 1985). A plaintiff moving for summary judgment must conclusively prove all essential elements of her claim. *Cullins v. Foster*, 171 S.W.3d 521, 530 (Tex. App.—Houston [14th Dist.] 2005, pet. denied) (citing *MMP, Ltd. v. Jones*, 710 S.W.2d 59, 60 (Tex. 1986)); *see* Tex. R. Civ. P. 166a(c). When reviewing a summary judgment, we take as true all evidence favorable to the nonmovant, indulging every reasonable inference and resolving any doubts in the nonmovant's favor. *Cantey Hanger, LLP v. Byrd*, 467 S.W.3d 477, 481 (Tex. 2015).

Once the movant facially establishes its right to summary judgment, the burden shifts to the nonmovant to present a material fact issue that precludes summary judgment. *See City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex. 1979); *Dolcefino v. Randolph*, 19 S.W.3d 906, 916 (Tex. App.—Houston [14th Dist.] 2000, pet. denied). Evidence raises a genuine issue of fact if reasonable and fair-minded jurors could differ in their conclusions in light of all the summary-judgment evidence. *See Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755–56 (Tex. 2007) (per curiam).

In their single issue, the appellants contend that the trial court erred in granting Carlin's motion for summary judgment. They argue that Carlin's "summary judgment evidence does not support the trial court granting summary judgment" because appellants' assertion that they could "legally sell" Trendsetters "does not amount to fraud." Essentially, the appellants argue that Carlin was not entitled to summary judgment in this case because her affidavit evidence is conclusory and therefore incompetent.

Although the appellants did not file a response to Carlin's traditional

5

summary-judgment motion, they still may challenge on appeal the sufficiency of Carlin's proof to support summary judgment. *See M.D. Anderson Hosp. & Tumor Inst. v. Willrich*, 28 S.W.3d 22, 23 (Tex. 2000) (per curiam). Likewise, although the appellants did not object to Carlin's summary-judgment evidence in the trial court, an objection that statements in an affidavit are conclusory asserts a defect of substance, which may be raised for the first time on appeal. *See Pipkin v. Kroger Tex., L.P.*, 383 S.W.3d 655, 670 (Tex. App.—Houston [14th Dist.] 2012, pet. denied).

Conclusory statements in affidavits are not proper summary-judgment proof if there are no facts to support the conclusions. *Dolcefino*, 19 S.W.3d at 930 & 930 n.21. "[A]n affidavit that is merely a sworn statement of the allegations in a pleading or that simply paraphrases statutory language is conclusory and lacks probative force." *Lenoir v. Marino*, 469 S.W.3d 669, 686 (Tex. App—Houston [1st Dist.] 2015) (op. on reh'g), *aff'd*, 526 S.W.3d 403 (Tex. 2017). "On the other hand, logical conclusions are not improperly conclusory if they are based on underlying facts stated in the affidavit or its attachments." *Id.* at 686–87. Also, affidavit statements are not conclusory if "they furnish some factual information that could have been rebutted and, therefore, contain enough underlying facts to support a summary judgment award." *La China v. Woodlands Operating Co., L.P.*, 417 S.W.3d 516, 520 (Tex. App.—Houston [14th Dist.] 2013, no pet.).

In their affidavits, both Carlin and Smith described a representation made by the appellants to Smith "that they could legally sell Trendsetters." In addition, Smith stated the appellants "positively asserted" to him "that Trendsetters would have no problem continuing to operate after the sale." Such assertions do not merely state the legal conclusion that the appellants engaged in fraud, but rather describe specific, material (mis)representations the appellants made to Smith during the negotiations

that were intended to induce Carlin to purchase Trendsetter. Such facts could have been rebutted. *See id.*

Moreover, the documents attached to Carlin's affidavit and included as exhibits to Carlin's motion provide additional facts establishing that the appellants engaged in fraud. *See Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 524 (Tex. 1998) (outlining elements of fraud: (1) material misrepresentation was made; (2) representation was false; (3) speaker knew it was false or made it recklessly; (4) intent was that other party act on representation; (5) party acted in reliance on representation; and (6) party suffered injury). Even if the appellants were able to enter into the share purchase agreement to sell their business, their key misrepresentation during negotiations was "that Trendsetters would have no problem continuing to operate after the sale." The August 2014 letter and the December 2011 memorandum indicate that, contrary to this representation, the business Trendsetters would not be able to continue operating "with no problem" as an HHA after the sale. The evidence shows the appellants knew or should have known that, if they sold Trendsetters to Carlin, Trendsetters would not be able to continue to operate as a viable HHA. Instead, Trendsetters would have its Medicare billing number deactivated and would have to successfully complete the enrollment and survey process to qualify as a new HHA. The evidence also shows that Carlin relied on the appellants' representation and suffered injury. Smith stated he recommended to Carlin that she purchase Trendsetters from the appellants in reliance upon this representation. According to Carlin, she would not have signed the share purchase agreement and paid the appellants $75,000 if she had known their representation was false.

We conclude that Carlin's and Smith's affidavits constitute competent

summary-judgment evidence[3] and that the trial court did not err in granting summary judgment in Carlin's favor. We overrule the appellants' challenge.

Next, within their sole issue, the appellants invoke rule 320 of the Texas Rules of Civil Procedure and argue that summary judgment is not proper "based on good cause and in the interest of justice."

The appellants allege that they did not receive Carlin's summary-judgment motion or the notice of hearing.[4] They do not dispute that the methods used by Carlin to serve them (U.S. first-class mail for Vickie Robinson and Nicole Lee, and email for Cindy Johnson) "are clearly permitted by the Texas Rules of Civil Procedure." *See* Tex. R. Civ. P. 21a. Nevertheless, the appellants argue that "they are obviously not the most effective methods for providing service/notice and to establish that the opposing party actually 'received' the served document." The appellants further point out that they appeared pro se.

A trial court has broad discretion in deciding a motion for new trial, and we may not disturb its ruling absent a manifest abuse of discretion. *See id.* 320 (providing new trial may be granted and judgment set aside for "good cause" on motion or the court's own motion); *Waffle House, Inc. v. Williams*, 313 S.W.3d 796, 813 (Tex. 2010); *Champion Int'l Corp. v. Twelfth Court of Appeals*, 762 S.W.2d

---

[3] *Compare Padilla v. Metro. Transit Auth. of Harris Cty.*, 497 S.W.3d 78, 86 (Tex. App.—Houston [14th Dist.] 2016, no pet.) (affidavit was not conclusory where statement regarding Metro's blockage of entrances and exits was statement of fact, not inference from unstated facts (citing *Arkoma Basin Expl. Co. v. FMF Assocs. 1990–A, Ltd.*, 249 S.W.3d 380, 389 n.32 (Tex. 2008))), *with Benchmark Bank v. Am. Nat'l Bank of Tex.*, No. 05-14-00810-CV, 2016 WL 638095, at *10 (Tex. App.—Dallas Feb. 17, 2016, no pet.) (mem. op.) (statements that bank was not liable for voluntary advancement of funds and was owed repayment of investment in agreement were "conclusory statements concerning liability" and not proper summary judgment proof).

[4] In her affidavit, Cindy Johnson stated that she "inadvertently did not see or review the emails containing the Motion for Summary Judgment and Notice of Hearing." According to Vickie Robinson, in her affidavit, Cindy Johnson "advised [Vickie Robinson] that she did not see the emails containing the Motion for Summary Judgment."

898, 899 (Tex. 1988) (orig. proceeding) (per curiam). A trial court abuses its discretion if it acts without reference to any guiding rules or principles or fails to correctly analyze or apply the law. *Celestine v. Dep't of Family & Protective Servs.*, 321 S.W.3d 222, 235 (Tex. 2010).

The appellants have not cited, nor have we found, any authority supporting their position that a trial court abuses its discretion by failing to grant a new trial because a party chose not to engage counsel or because the movant did not serve her summary-judgment motion or notice of hearing using the party's preferred method. To the contrary, while a party to civil litigation in Texas has the right to appear pro se, she must adhere to the rules of evidence and procedure and will not be treated differently than a represented party. *See* Tex. R. Civ. P. 7; *Ex parte Shaffer*, 649 S.W.2d 300, 302 (Tex. 1983) (orig. proceeding); *Mansfield State Bank v. Cohn*, 573 S.W.2d 181, 184–85 (Tex. 1978). Nor does a trial court abuse its discretion in denying a motion for new trial based on a party's mere alleged inadvertence in seeing or reviewing a summary-judgment motion or notice of hearing. *See, e.g.*, *Franklin One Partners II, LLC v. Rodriguez*, No. 13-16-00196-CV, 2016 WL 5941844, at *2–3 (Tex. App.—Corpus Christi Oct. 13, 2016, no pet.) (mem. op.) (party received summary-judgment motion and notice by email but alleged did not receive by fax); *Brown v. Melissa 121/5 Partners, Ltd.*, No. 05-13-01189-CV, 2014 WL 3811120, at *2 (Tex. App.—Dallas Aug. 4, 2014, no pet.) (mem. op.) (party alleged failure to see hearing notice "mixed in the middle of two large documents"). We overrule this portion of the appellants' issue.

### III.   CONCLUSION

We affirm the trial court's judgment.

/s/      Marc W. Brown
Justice

Panel consists of Justices Busby, Brown, and Jewell.