## Kyle JOHNSON *v.*
## THE CINCINNATI INSURANCE COMPANY

08-327                                                                289 S.W.3d 407

Supreme Court of Arkansas
Opinion delivered December 4, 2008

[Rehearing denied January 15, 2009.*]

*Chaney Law Firm, P.A.*, by: *Donald P. Chaney, Jr.*, for appellant.

---

* BROWN, J., not participating.

*Mixon Law Firm,* by: *Donn Mixon,* for appellee.

Elana Cunningham Wills, Justice. This is the second appeal before our court in this case. *See The Cincinnati Ins. Co. v. Johnson,* 367 Ark. 468, 241 S.W.3d 264 (2006) (*Johnson I*).

Appellant Kyle Johnson was injured in a car accident in December 2001. The driver of the other car was insured by the appellee, The Cincinnati Insurance Company ("Cincinnati"). After a trial in November 2005, a Greene County jury rendered a verdict in Johnson's favor on November 23, 2005. On December 5, 2005, Johnson filed a motion for judgment notwithstanding the verdict and a motion for new trial, contending that the jury erred in its findings regarding his damages. The circuit court granted Johnson's motion for new trial in an order entered on January 5, 2006, finding that the amount of the jury's verdict was too small because the jury failed to award damages that Johnson had proven at trial.

Cincinnati appealed from the order granting Johnson's motion for new trial, arguing that the circuit court had lost jurisdiction to decide the motion on the thirtieth day after it was filed. This court agreed, holding that Johnson's motion had been deemed denied on the thirtieth day, or January 4, 2006. *Johnson I,* 367 Ark. at 471, 241 S.W.3d at 266 (reversing and dismissing).

After this court's decision in *Johnson I,* Johnson returned to the circuit court and filed, on December 19, 2006, a motion under Ark. R. Civ. P. 60(c)(4) to set aside the November 23, 2005, judgment. In his motion, Johnson argued that the reversal of the circuit court's order granting his motion for new trial had the effect of reinstating the "erroneous judgment that was entered in the first instance," and he alleged that the 2005 judgment "should be set aside based upon misrepresentation or fraud committed by [Cincinnati's] counsel in preparing an improper and erroneous form of judgment." Specifically, Johnson alleged that Cincinnati's counsel had prepared a judgment that did not conform to the law and the evidence, in that it "zeroed out" the jury's verdict awarding Johnson $12,537.60, in light of the $25,000.00 paid by the insurance carrier for the tortfeasor.

The circuit court held a hearing on November 5, 2007, and subsequently entered an order on November 9, 2007, denying Johnson's motion. The court first found that this court's mandate, issued on October 12, 2006, deprived it of jurisdiction. In addition, the court stated that, although fraud could be a reason to set

aside a judgment under Rule 60 after the expiration of ninety days, Johnson had failed to demonstrate the existence of constructive fraud. Johnson filed a timely notice of appeal on December 10, 2007.[1]

Johnson has appealed from the circuit court's denial of his motion to set aside a judgment pursuant to Ark. R. Civ. P. 60. This court has noted that the only limitation on the exercise of the power to set aside a judgment pursuant to Rule 60 is addressed to the sound discretion of the court. *See RLI Ins. Co. v. Coe*, 306 Ark. 337, 813 S.W.2d 783 (1991). *See also Watson v. Connors*, 372 Ark. 56, 270 S.W.3d 826 (2008) (it is within the discretion of the circuit court to determine whether it has jurisdiction under Rule 60 to set aside a judgment, and the question on appeal becomes whether there has been an abuse of that discretion). However, in a constructive fraud case, the court of appeals has noted that "we evaluate the circuit court's factual findings about the elements of constructive fraud for clear error." *Downum v. Downum*, 101 Ark. App. 243, 274 S.W.3d 349 (2008) (quoting *Knight v. Day*, 343 Ark. 402, 36 S.W.3d 300 (2001)).

In his first point on appeal, Johnson argues that the circuit court erred in determining that it lacked jurisdiction to take any further action on his motion to set aside the judgment after this court handed down the mandate in *Johnson I*. As mentioned above, the circuit court determined that this court's mandate "deprived [the circuit] court of jurisdiction to take any further action." On this specific issue, we conclude that the circuit court was wrong.

The mandate is the official notice of action of the appellate court, directed to the court below, advising that court of the action taken by the appellate court, and directing the lower court to have the appellate court's judgment duly recognized, obeyed, and executed. *Dolphin v. Wilson*, 335 Ark. 113, 118, 983 S.W.2d 113, 115 (1998) (citing 5 Am. Jur. 2d *Appellate Review* § 776). Under this rule, "an inferior court has no power or authority to deviate from the mandate issued by an appellate court." *Id.* (citing *Briggs v. Pennsylvania R., Co.*, 334 U.S. 304 (1948)). Whatever is before the supreme court and disposed of in the exercise of its appellate jurisdiction must be considered settled, and the lower court must

---

[1] The thirty-day deadline for filing the notice of appeal fell on December 9, 2007, which was a Sunday; therefore, the December 10, 2008, filing was timely. *See* Ark. R. Civ. P. 6(a).

carry that judgment into execution according to its mandate. *Fulkerson v. Thompson*, 334 Ark. 317, 974 S.W.2d 451 (1998).

The question presented in the instant case is whether this court's mandate in *Johnson I* deprived the lower court of jurisdiction to take any further action on a Rule 60(c)(4) motion. Our mandate in *Johnson I*, reversing the order granting a new trial, states that "it is the decision of the Court that the case be reversed and dismissed for the reasons set out in the attached opinion." In that opinion, this court held that the circuit court had erred in granting Johnson's motion for a new trial because, in waiting until the thirty-first day to enter that order, the court lost jurisdiction to rule on the motion under Ark. R. Civ. P. 59(b). *Johnson I*, 367 Ark. at 471, 241 S.W.3d at 266. The court concluded its opinion with the following:

> Based upon the foregoing conclusions, we hold that *the circuit court was without jurisdiction to hold the hearing and to enter the order* on January 5, 2006, on Johnson's motion for new trial. *Accordingly, we lack jurisdiction to consider the issues*, and *we dismiss the appeal. See Murchison v. Safeco Ins. Co. of Illinois*, 367 Ark. 166, 238 S.W.3d 11 (2006).
>
> Reversed and dismissed.

*Id.* at 472-73, 241 S.W.3d at 267 (emphasis added).

This court has noted that the trial court should look beyond the words of reversal and look to the effect of the opinion in proceeding upon remand. *See Glover v. Woodhaven Homes, Inc.*, 346 Ark. 397, 57 S.W.3d 211 (2001) (quoting *Kneeland v. Amer. Loan & Trust Co.*, 138 U.S. 509 (1891)). Here, in the *Johnson I* opinion, this court specifically dismissed *only the appeal* based on our lack of jurisdiction, which in turn was premised on the circuit court's lack of jurisdiction to enter the order that it entered. Stated another way, this court's action in reversing and dismissing did not have the effect of completely dismissing *the entire proceedings in circuit court*; rather, we dismissed *the appeal*.

The practical effect of this court's opinion in *Johnson I* was to vacate the circuit court's order granting Johnson's motion for new trial; after this court reversed the lower court on that issue, it was as though the order granting the new trial never existed. *See Schofield v. Rankin*, 86 Ark. 86, 90, 109 S.W. 1161, 1163 (1908) ("The effect of the reversal is to annul, vacate, and set aside the

judgment or decree — to completely wipe it out as if it had never been in existence. Nothing remains of it; it is gone."); 5 Am. Jur. 2d *Appellate Review*, § 861 ("A complete reversal generally annuls the judgment below, and the case is put in the same posture in which it was before the judgment was entered.").

Accordingly, following this court's reversal of the circuit court's order granting Johnson's motion for new trial, the matter stood before the circuit court as though that order had never been entered. In other words, the parties stood in the same position as they were when the original judgment — the November 23, 2005, judgment — was entered. The circuit court was *not* deprived of jurisdiction to act on a Rule 60(c) motion. *Compare Foohs v. Bilby*, 95 Ark. 302, 129 S.W. 1104 (1910) (trial court retained jurisdiction under statutory precursor to Rule 60 after case was appealed and affirmed); *Davis v. Davis*, 291 Ark. 473, 725 S.W.2d 845 (1987) (circuit court retained jurisdiction to modify its order under Rule 60(c)(4) even though the appellate court affirmed that order); *Garrett v. Allstate Ins. Co.*, 26 Ark. App. 199, 762 S.W.2d 3 (1988) (a trial court may modify or set aside its judgment, or vacate its judgment under Rule 60 to allow a new trial, even though the judgment has been affirmed on appeal). The circuit court was wrong in its conclusion that our mandate deprived it of jurisdiction to entertain a motion under Rule 60(c).

However, that is not the end of the matter. Johnson must still demonstrate that he had a basis for setting aside the November 23, 2005, order pursuant to Ark. R. Civ. P. 60. Johnson urges that the circuit court should have corrected the November 2005 order pursuant to Ark. R. Civ. P. 60(c)(4). That rule provides as follows:

> The court in which a judgment, other than a default judgment . . . has been rendered or order made shall have the power, after the expiration of ninety (90) days of the filing of said judgment with the clerk of the court, to vacate or modify such judgment or order:
>
> . . . .
>
> (4) For misrepresentation or fraud (whether heretofore denominated intrinsic or extrinsic) by an adverse party.

Unless a party falls within this exception (or one of the other exceptions set out in Rule 60(c), which are not at issue in this case), a

court has no power to modify or set aside an order after the expiration of ninety days. *See O'Marra v. MacKool*, 361 Ark. 32, 38, 204 S.W.3d 49, 52 (2005) (citing *Blackwood v. Floyd*, 342 Ark. 498, 29 S.W.3d 694 (2000)).

Johnson contends that the November 2005 judgment was entered as a result of constructive fraud, and that, therefore, the circuit court should have set it aside. In support of his argument, he cites *Davis v. Davis*, 291 Ark. 473, 725 S.W.2d 845 (1987). In *Davis*, after a bench trial, the circuit court sent a letter opinion to the parties' attorneys directing the appellant's attorney to prepare a precedent awarding his client, Rex Davis, a judgment of $12,836.14. Some time later, the attorney sent a precedent to the court that awarded Rex $24,761.14, explaining in a cover letter to the court that the additional money was intended to cover additional damages. The appellee, Pat Davis, did not receive a copy of this letter. Nonetheless, the circuit court signed the precedent and entered it on November 16, 1983. *Davis*, 291 Ark. at 474, 725 S.W.2d at 846.

Pat appealed, and the court of appeals affirmed the circuit court's judgment. Prior to the issuance of the mandate, however, Pat filed a motion in the circuit court asking the court to correct the judgment. The court, relying on Rule 60(c)(4), granted Pat's motion, entering an order correcting the judgment to reflect the original award of $12,836.14. Rex appealed, arguing a lack of jurisdiction, as discussed above, and that the court erred in correcting the judgment. *Id.* at 475, 725 S.W.2d at 846.

On appeal, this court held that, under Rule 60(c)(4), the circuit court could set aside the judgment upon finding that a fraud had been practiced by the party obtaining the judgment. Noting that a fraud can occur even in the "complete absence of any moral wrong or evil intention," the court held that Rex's attorney's actions in submitting a judgment that did not reflect the actual judgment of the court constituted fraud, stating that it was "obvious that the judgment of the trial court was intended to be in the amount of $12,836.14. Any change, absent the knowledge and consent of the trial court, would not be the judgment of the court." *Id.* at 477, 725 S.W.2d at 847.

Johnson argues that *Davis* is on all fours with his case, and that the trial court should have found that Cincinnati committed a constructive fraud on the court when it submitted the precedent "zeroing out" the damages to the court for entry. Cincinnati

responds that there was nothing fraudulent in its actions when it prepared a precedent because it sent the proposed order to both the court and opposing counsel.

Cincinnati urges that the more apposite case is *State Office of Child Support Enforcement v. Offutt*, 61 Ark. App. 207, 966 S.W.2d 275 (1998). In *Offutt*, the Office of Child Support Enforcement (OCSE) commenced an action to determine paternity of a child; the appellee, Jerry Offutt was subsequently determined to be the child's father. In November of 1995, OCSE's attorney prepared a precedent finding that Offutt was the child's father and establishing child support. OCSE mailed the precedent to the court and to Offutt's attorney, along with a letter by which Offutt's attorney was asked to notify the court within seven days if there was an objection to the precedent; OCSE also asked the court to sign and enter the order if it did not receive an objection from Offutt within seven days. Offutt received the letter and called the court on the seventh day, objecting to the precedent. However, the court entered the order anyway on November 29, 1995. *Offutt*, 61 Ark. App. at 209, 966 S.W.2d at 275-76.

Offutt later filed a motion for relief pursuant to Rule 60(b), and the circuit court eventually made an oral ruling that the November 29, 1995, order should be amended. However, the court did not enter a written order until several months later. *Id.* at 209, 966 S.W.2d at 276.

OCSE appealed, arguing that the circuit court lacked the authority to modify the November 29, 1995, order after the lapse of ninety days. *Id.* In response, Offutt argued that the court maintained its jurisdiction to act on the November 1995 order because counsel for OCSE had committed fraud. Offutt argued that the fraud consisted of OCSE's sending the court a precedent containing findings not made by the court and asking the court to sign the order if Offutt raised no objection within seven days. Offutt cited *Davis v. Davis, supra,* in support of this argument, but the court of appeals rejected his contention. Noting that the attorney in *Davis* never gave opposing counsel an opportunity to object to the precedent, *id.* at 212, 966 S.W.2d at 277, the court of appeals distinguished *Davis* as follows:

> Here, [OCSE's] attorney sent a copy of the precedent and transmittal letter to both the judge and [Offutt's] attorney. By requesting that the judge sign the precedent only if he did not receive an objection from opposing counsel within seven days, the

judge was alerted to the fact that there might be an objection from [Offutt's] counsel as to the form or the content of the judgment. We do not interpret this action as an effort by [OCSE's] attorney to deceive either the judge or [Offutt's] attorney. In fact, we know that [Offutt's] attorney received the precedent and letter because she contacted the judge and voiced her objection to the precedent, but the judge signed it anyway. We do not consider the conduct of [OCSE's] attorney in this case to be in any way similar to the conduct of the attorney in *Davis* and certainly not fraudulent within the meaning of Rule 60(c)(4).

*Id.* at 212-13, 966 S.W.2d at 277.

The facts of the instant case are much more analogous to *Offutt* than they are to *Davis*. Here, Donn Mixon, counsel for Cincinnati, gave Johnson's attorney, Don Chaney, an opportunity to review the precedent prior to having the circuit court sign it, as evidenced by a letter sent by Chaney to Mixon on November 9, 2005.[2] Chaney wrote:

Do you agree that because the jury was informed of the amount of the primary insurance policy limits of $25,000.00, that the jury's verdict in the total amount of $12,537.60 is all due and payable by Cincinnati Insurance Company? If so, then I trust that you will draft the precedent for a judgment accordingly. If you do not agree, then please let me know, and I will attempt to provide you with some legal authority on point.

Mixon responded by sending the court a letter, copied to Chaney, stating the following:

Attached is a precedent for a judgment in this case. We believe it to be proper. I sent this to Don Chaney. He has not approved it, but he did let me know that he believes that Cincinnati Insurance should pay the $12,537.60 awarded by the jury. As you will recall, all of this was hammered out before the trial in chambers where it was determined that you would subtract the $25,000 from the tortfeasor and make any other adjustments that would be necessary in the final verdict. . . .

---

[2] Chaney also conceded at the hearing before the circuit court that he had received this letter.

We believe ... our precedent is accurate and appropriate for the court's signature. If you desire anything further from us, please let me know.

Here, as was the case in *Offutt*, there is simply no proof of fraud in this case, whether actual or constructive. This court noted in *Davis v. Davis, supra*, that constructive fraud is defined as a "breach of legal or equitable duty which, irrespective of the moral guilt of the fraud feasor, the law declared fraudulent because of its tendency to deceive." *Davis*, 291 Ark. at 476, 725 S.W.2d at 847 (citing *Lane v. Rachel*, 239 Ark. 400, 389 S.W.2d 621 (1965)). Here, counsel for the insurance company gave Johnson's attorney a copy of the precedent to review before asking the court to enter it. Although Johnson may have disagreed with the contents of the precedent, that fact alone does not prove that Cincinnati engaged in fraudulent conduct in asking the court to enter it, especially where his objection was made known to the trial court. Thus, the trial court correctly determined that "the constructive fraud that the plaintiff asserts as necessary to afford the court authority to act simply does not exist under the facts of this case."

Johnson raises three other points on appeal, contending that the November 23, 2005, judgment was wrong and should have been set aside for various reasons. He contends that the judgment 1) erroneously offset Johnson's settlement with the tortfeasor from the verdict awarded by the jury; 2) wrongfully ordered medical benefits to be paid to Cincinnati, causing Johnson to not be "made whole" by the judgment; and 3) did not reduce the medical payment subrogation claim by the "one-third cost of collection attorney's fee payable to [Johnson's] attorney for procuring the settlement for policy limits."

We decline to reach any of these arguments, as the circuit court did not rule on any of them. We will not consider arguments on appeal when a party has failed to obtain a ruling from the circuit court. *See, e.g., Beverly Enterprises-Arkansas, Inc. v. Thomas*, 370 Ark. 310, 251 S.W.3d 267 (2007); *Cox v. Miller*, 363 Ark. 54, 210 S.W.3d 842 (2005). Moreover, none of these issues would constitute grounds for setting aside a judgment after the expiration of more than ninety days under Ark. R. Civ. P. 60(c).

Affirmed.

BROWN, J., not participating.